UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MITCHELL P. COOK** | **CIVIL ACTION** |
| **versus** | **NO. 07-9226** |
| **TERRY TERRELL** | **SECTION: "R" (1)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Mitchell P. Cook, is a state prisoner incarcerated at the Allen Correctional Center, Kinder, Louisiana. On July 20, 2004, he was convicted of driving while intoxicated, fourth offense, in violation of Louisiana law.[2] On August 10, 2004, he was sentenced to a term of fifteen years imprisonment; however, all but sixty days of that sentence was then suspended, he was placed on five years probation, and he was ordered to pay a fine of $5000.00.[3] On December 13, 2004, his probation was revoked, and he was ordered to serve the original fifteen-year sentence.[4] On September 23, 2005, the Louisiana First Circuit Court of Appeal affirmed petitioner's conviction and sentence.[5]

After unsuccessfully seeking post-conviction relief in the state courts, petitioner filed the instant federal application for *habeas corpus* relief.[6] In support of that federal application, he claims:

    1.    Petitioner was not afforded a fair trial;

---

[2] State Rec., Vol. II of III, minute entry dated July 20, 2004; State Rec., Vol. II of III, jury verdict form. The record reflects that he also subsequently pleaded guilty to "hit-and-run" and was sentenced to thirty days in jail on that charge. State Rec., Vol. III of III, transcript of August 10, 2004, p. 9.

[3] State Rec., Vol. III of III, transcript of August 10, 2004; State Rec., Vol. II of III, minute entry dated August 10, 2004.

[4] State Rec., Vol. I of III, minute entry dated December 13, 2004.

[5] State v. Cook, No. 2004 KA 2672 (La. App. 1st Cir. Sept. 23, 2005) (unpublished); State Rec., Vol. I of III.

[6] The petition was originally filed in the United States District Court for the Middle District of Louisiana and was subsequently transferred to this Court.

       2.       The records of his prior convictions were not properly certified;

       3.       Petitioner's prior conviction for driving while intoxicated, second offense, was unconstitutional; and

       4.       State Trooper Coy Canulette prepared two conflicting police reports regarding the incident.

The state concedes that petitioner's federal application is timely and that he exhausted his state court remedies.[7]

### Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

---

[7] Rec. Doc. 10, p. 2, ¶¶ 2 and 3.

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> On the afternoon of March 10, 2003, as he drove towards Pearl River, Louisiana on Highway 1091, Jason Clausen observed a vehicle as it swerved on the highway. Clausen described the vehicle as a white Dodge Dynasty. As the white vehicle approached a curved portion of the highway, it veered off of the highway and onto an adjacent yard. The driver of the white vehicle drove through the ditch of the yard and over shrubs and a tree stump. A green Camaro Z-28 was parked next to the shrubs in the yard, parallel, facing the street. After driving over the shrubs and tree stump, the driver of the white vehicle struck the Camaro, backed into a tree stump, then went forward and struck the Camaro a second time before getting back on the highway. As a result of the incident, the bumper of the white

vehicle became partially detached. Clausen reported his observations to the St. Tammany Parish Sheriff's Office, including the license number of the white vehicle, MGW938. The license plate number provided by Clausen was registered to a white 1989 Chrysler New Yorker.

Clausen continued to travel behind the white vehicle, as it turned right onto Highway 11, then left onto Highway 41. The driver continued to swerve, as he ultimately turned left onto Pine Street extension, heading back towards Slidell, Louisiana. Clausen observed the vehicle as it entered the driveway of a residence on Maverick Run. As he passed the residence, Deputy Troy Mitchell of St. Tammany Parish Sheriff's Office was approaching. Clausen flagged down Deputy Mitchell and pointed out the residence where the vehicle parked. Deputy Mitchell had been dispatched to the area after Clausen's report to Sheriff's office.

Deputy Mitchell approached the residence, observed the vehicle, and then knocked on the door. An individual named Lee Matthews answered the door. Deputy Mitchell questioned Matthews as to the whereabouts of the owner of the white Chrysler New Yorker parked in front of the residence and Matthews pointed toward the defendant. Deputy Mitchell asked the defendant to step outside of the residence. Deputy Mitchell immediately noticed that the defendant staggered as he walked and emitted the smell of an alcoholic beverage, and also noted the defendant's speech was slurred. The defendant, admitted that he was the owner of the Chrysler New Yorker and that he had driven the vehicle to the residence.

Deputy Mitchell handcuffed the defendant, placed him in the back passenger seat of his unit, and waited for a Louisiana state trooper to arrive. Trooper Coy Canulette, of Louisiana State Police Troop L, had been dispatched and arrived shortly after the defendant was detained. Trooper Canulette asked the defendant to exit Deputy Mitchell's unit. Trooper Canulette also noted the emission of the smell of an alcoholic beverage. Trooper Canulette read the defendant his rights, removed the handcuffs, and administered the horizontal gaze nystagmus portion of the field sobriety test. Trooper Canulette noted six clues that indicated the defendant was under the influence of alcohol. The defendant refused other portions of the field sobriety test.

The defendant was re-handcuffed and again placed in Deputy Mitchell's unit. Deputy Mitchell proceeded to transport the defendant to the Sheriff's Office. Trooper Canulette examined the

defendant's vehicle and departed just subsequent to Deputy Mitchell and the defendant. After Deputy Mitchell drove approximately one-half of a mile from the residence on Maverick Run, the defendant insisted that he be allowed to smoke. Deputy Mitchell advised the defendant that he would not be allowed to smoke in the unit. The defendant kicked the deputy in the back of the head. Deputy Mitchell applied his brakes, regained his composure, and then exited the unit. The defendant lunged at the deputy when he opened the door. In order to gain control of the defendant, Deputy Mitchell pepper sprayed him, and the defendant landed on the ground and injured his face.

When Trooper Canulette approached Deputy Mitchell's unit, he observed the deputy and the defendant standing outside of the vehicle. Trooper Canulette pulled up behind Deputy Mitchell's unit. Deputy Mitchell informed Trooper Canulette of the difficulties he was having with the defendant. Trooper Canulette placed the defendant in his caged unit and transported him to the Sheriff's Office. The defendant was transported to the hospital for examination of facial injuries. Thereafter the defendant was transported back to the Sheriff's Office where he was booked and again read his rights. The defendant refused to sign a waiver of rights form and refused to submit to a chemical test.[8]

### Fair Trial

Petitioner claims he was not afforded a fair trial. Specifically, petitioner asserts: "Insurance reports with expert witness 'insurance investigator' were not subpoenaed for my trial by D.A. or public defender. They [the insurance reports] stated I was not in any accident!"[9]

As a preliminary matter, the Court notes that petitioner is referring to an investigation conducted in March of 2003 by Direct Adjusting Company, Inc., regarding an insurance claim filed with petitioner's insurer by Robert O'Brien, the owner of the Camaro. As part of that investigation,

---

[8] State v. Cook, No. 2004 KA 2672, at pp. 2-5 (La. App. 1st Cir. Sept. 23, 2005) (unpublished); State Rec., Vol. I of III.

[9] Rec. Doc. 4, p. 3.

adjuster Risa Farmer interviewed George Frank Matthew Yates. Yates told Farmer that he heard a loud noise and witnessed a white car come out of the ditch; however, he did not see the white car actually hit the Camaro. A damage assessment was also completed by Darrin Rosado, who concluded that the damage to the Camaro did not appear to result from the alleged accident with petitioner's car.

To the extent that petitioner is claiming that his rights were violated by the prosecutor's failure to offer such evidence at trial, the claim is clearly meritless. The prosecutor was under no obligation to use information collected or conclusions reached in the private insurance investigation as part of the state's case.

To the extent that petitioner is claiming that his counsel was ineffective in failing to present such evidence at trial, that claim likewise has no merit. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ...

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court's decision rejecting such a claim unless petitioner shows that the decision was contrary to, or

involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).

Even if the Court were to assume that evidence regarding the insurance claim investigation would be admissible, which is by no means clear, and were to further assume that defense counsel performed deficiently in failing to secure and/or present such information at trial, petitioner still cannot show that he was prejudiced for at least two reasons.

First, the jury was nevertheless made aware of the results of the insurance investigation through other means. On direct examination, Robert O'Brien testified as follows:

> Q. Did you ever make a claim against the car, car insurance company?
>
> A. Yes, I did. And they denied it, saying that their client was not involved in an accident.
>
> Q. And that is, which person's insurance company? Do you know?
>
> A. Mitchell Cook.
>
> Q. And the information you got to file against Mr. Cook's company was from police reports?
>
> A. Police reports.
>
> Q. And they denied paying you anything for the damage?
>
> A. Yes.[10]

Second, petitioner's D.W.I. conviction did not turn on whether or not he was involved in an accident with the Camaro. All the prosecution was required to prove to support the instant

---

[10] State Rec., Vol. III of III, transcript of July 20, 2004, p. 77.

- 9 -

conviction was that petitioner was operating a vehicle while under the influence of an alcoholic beverage.  See La.Rev.Stat.Ann. § 14:98(A)(1)(a).  That fact was established through other evidence, including the testimony of Deputy Troy Mitchell and Trooper Coy Canulette regarding petitioner's own statements, their firsthand observations, and the failure of the field sobriety test.[11]

Petitioner simply has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, in light of the AEDPA's deferential standard, this Court likewise rejects that claim.

Improper Certification of Predicate Convictions

Petitioner next claims:

> [P]redicates used to enhance were not certified or certified properly as C.Cr.P. Art. 871 states "SHALL" be done to enhance. See B.O.I.'s on 1st & 2nd D.W.I. uncertified and 3rd D.W.I. certified to Michael Cook.  That's not me![12]

The fatal flaw with petitioner's claim is that the defense *stipulated* to the predicate convictions.  The transcript reflects the following exchange:

> BY MS. KNIGHT [prosecutor]:
> ....
> Your Honor, at this time the State is going to offer a stipulation to defense counsel that Mr. Mitchell Cook did in fact on the date of March 10th, 2003, have three previous DWI's within ten years of the date of the offense on March 10th, 2003.  They would be

---

[11] The Court is aware that petitioner was also charged with "hit-and-run," and, of course, that offense did turn on whether he actually hit the Camaro.  However, petitioner *pleaded guilty* to that charge.  State Rec., Vol. III of III, transcript of August 10, 2004, p. 9.

[12] Rec. Doc. 4, p. 3.

>under Docket Number 96KS2294 out of Slidell City Court, that would be a conviction, and also the 262500 conviction out of St. Tammany, and lastly, 290424 conviction out of St. Tammany Parish.
>
>BY MR. CARRIER [defense counsel]:
>    Yes, Your Honor, we are stipulating to that fact.
>
>BY THE COURT:
>    Let the stipulation be received.[13]

"Once a stipulation is entered, even in a criminal case, the government is relieved of its burden to prove the fact which has been stipulated by the parties." United States v. Branch, 46 F.3d 440, 442 (5th Cir. 1995). Therefore, any alleged defects with respect to the underlying evidence of the predicate convictions are of no moment. The existence of the predicate convictions was conclusively established for purposes of trial by the stipulation, not by the records of those convictions.

<u>Challenge to Predicate Conviction of Driving While Intoxicated, Second Offense</u>

On March 11, 1997, petitioner pleaded guilty to one count of driving while intoxicated, second offense, and he was sentenced to six months in parish jail; however, that sentence was suspended, and he was placed on supervised probation for two years.[14] On February 13, 1998, his probation was revoked, and he was ordered to serve his six-month sentence on that conviction.[15]

---

[13] State Rec., Vol. III of III, transcript of July 20, 2004, pp. 114-15. The convictions referenced in the stipulation match the allegations of the bill of information.

[14] State Rec., Vol. I of III, extract of minute entry dated March 11, 1997.

[15] State Rec., Vol. I of III, minute entry dated February 13, 1998.

In the instant federal application, petitioner claims that the 1997 conviction was invalid because he was not informed of his right to a jury trial. That claim is barred by Lackawanna County District Attorney v. Cross, 532 U.S. 394 (2001), in which the United States Supreme Court stated:

> [W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

Id. at 403-04 (citation omitted).[16]

Petitioner's 1997 conviction is no longer open to direct or collateral attack, in that his sentence for that conviction has fully expired and his limitations period for any such attack ended long ago. Therefore, he may not challenge his current enhanced sentence in a § 2254 application on the ground that the 1997 conviction was illegal.

---

[16] The Supreme Court noted that the Lackawanna prohibition would not apply when it is alleged that the predicate conviction was unconstitutional because it was obtained where there was a failure to appoint counsel as required by Gideon v. Wainwright, 372 U.S. 335 (1963). Lackawanna, 532 U.S. at 404. That limited exception is inapplicable in this case. Petitioner was represented in the 1997 proceeding by attorney James E. Talley. State Rec., Vol. I of III, extract of minute entry dated March 11, 1997.

The Supreme Court further noted that the Lackawanna prohibition may not apply if the federal *habeas corpus* petition is, effectively, the first and only forum available for review of the challenge to the prior conviction. Id. at 405; see also Flot v. Cain, Civ. Action No. 05-6439, 2007 WL 2491388, at *9 n.33 (E.D. La. Aug. 30, 2007). That potential exception is also inapplicable here, in that petitioner clearly could have challenged the use of the 1997 conviction to enhance his current sentence at the trial and in the direct appeal of his current conviction and sentence.

Conflicting Police Reports

As his final claim, petitioner states: "Two conflicting police reports were wrote by State Trooper Coy Canulette. Only one of the police reports can be true – Trooper committed a crime by filing and testifying to false police report."[17] However, petitioner does not explain how he believes the two reports conflict. The Court has reviewed the two reports and finds no significant difference.

Further, to the extent that petitioner is arguing that the prosecution knowingly presented false testimony by Canulette at trial, he has fallen far short of meeting the requisite burden of proof on such a claim. For a petitioner to establish that his constitutional rights have been violated by the introduction of perjured testimony, "it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements." Kutzner v. Cockrell, 303 F.3d 333, 337 (5th Cir. 2002). Rather, a petitioner "must show (1) the *actual falsity* of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution *knew* the witness's testimony was false." Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001) (emphasis added). Even assuming that the supposed conflict in question, whatever it might be, was material, petitioner has presented no evidence whatsoever that the trial testimony was in fact false, much less that the prosecution knew it was false.

For both of the foregoing reasons, the Court finds that petitioner simply has not established that he is entitled to relief with respect to this claim.

---

[17] Rec. Doc. 4, p. 4.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this sixth day of March, 2008.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**